**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **MOHAMED AL-HAMMOURI**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AMERICAN BOTTLING COMPANY** | ) | |
| Serve: The Corporation Company | ) | |
| 112 SW 7th Street, Suite C | ) | Case No. |
| Topeka, Ks 66603 | ) | |
| | ) | |
| **DR. PEPPER/SEVEN UP** | ) | |
| Serve: The Corporation Company | ) | |
| 112 SW 7th Street, Suite C | ) | |
| Topeka, Ks 66603 | ) | |
| | ) | |
| **DR. PEPPER SNAPPLE GROUP** | ) | |
| 9960 Lakeview Ave. | ) | |
| Lenexa, KS 66219 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Mohamed Al-Hammouri for his Complaint against Defendants, for unlawful discrimination on the basis of Plaintiff's race, ancestry and ethnicity in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq., as amended, ("Section 1981") states as follows.:

1.      Plaintiff Mohamed Al-Hammouri (hereinafter, "Plaintiff" or "Al-Hammouri") is of Arabic descent, a United States citizen, and a resident of the State of Kansas, residing at 1838 N. 78th Street, Kansas City, Kansas.

2.      Defendant Dr. Pepper/Seven Up (hereinafter "Defendant" or "Dr. Pepper") is a

Delaware corporation authorized to do business in the State of Kansas, and may be served by serving its registered agent, The Corporation Company, 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

3. Defendant Dr. Pepper Snapple Group, Inc., (hereinafter "Defendant" or "Dr. Pepper Snapple") is doing business in the State of Kansas at 9960 Lakeview Ave, Lenexa, KS 66219, and may be served at that address.

4. Defendant American Bottling Company (hereinafter "Defendant" or "American Bottling") is a Delaware company authorized to do business in the State of Kansas, and may be served by serving its registered agent, The Corporation Company, 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343, 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1367.

6. The events giving rise to the claims herein occurred in Lenexa, Johnson County, Kansas.

7. Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district

## FACTS COMMON TO ALL COUNTS

1. Plaintiff Mohamed Al-Hammouri was a District Manager with Defendants. He was hired by Defendants in October 2011. Initially Al-Hammouri reported to John Carpenter. In December 2013, Al-Hammouri began reporting to Todd Lindhoff.

2. Al-Hammouri was an excellent performer for Defendant, and consistently met or exceeded his performance expectations and was one of the top district managers in the company.

3.      Immediately after Lindhoff became Al-Hammouri's manager, Al-Hammouri began being treated differently than other employees.

4.      Lindhoff was disrespectful to Al-Hammouri in front of the employees under Al-Hammouri's and Lindoff's management.  Lindhoff, would frequently interrupt Al-Hammouri, and would be openly dismissive of Al-Hammouri in the workplace. Often Lindhoff would simply ignore Al-Hammouri entirely and refuse to communicate with him.

5.      Lindhoff would also require Al-Hammouri to tend to Lindhoff's personal errands such as walking Lindhoff's dogs, shopping for personal items, dropping off laundry and other such tasks. Lindhoff did not treat other management personnel who were not of Arabic descent similarly.

6.      In November 2016, Lindhoff called Al-Hammouri late at night and demanded that Al-Hammouri meet him at a bar in Blue Springs, Missouri.  When Al-Hammouri arrived and asked Lindhoff why he needed to meet with him, Lindhoff told him that he wanted his opinion of the San Bernardino, California, shootings.  The requested meeting involved no work-related business.  Lindhoff did not call any other managers underneath him to the bar to discuss the shooting.

7.      In March 2017 Al-Hammouri had approved vacation leave to travel to Dubai to visit his ill father.  On the morning of his flight, despite the fact he was on vacation leave starting that day, Al-Hammouri went into work to have a last minute meeting with his employees before his afternoon flight.   While Al-Hammouri was in the office, Lindhoff gave him a new project and told him he could not leave until he finished it.  Al-Hammouri told Lindhoff that he was on vacation and needed to leave to get to his flight and could not complete this last minute assignment.  Lindhoff responded by telling Al-Hammouri that he didn't know how things were

3

done in Al-Hammouri's country but that Al-Hammouri should not return until he shaved.

8.      Defendants do not have a policy regarding facial hair for its district managers and Al-Hammouri had only a slight amount of facial hair that was closely cut.   Another district manager under Lindhoff's management has a beard and was never asked to shave it.

9.      Additionally, Lindhoff made numerous racially motivated comments toward Al-Hammouri such as asking employees why they responded to Al-Hammouri's text message wishing them all a Happy Thanksgiving because people of Al-Hammouri's race and religion didn't celebrate Thanksgiving.   In fact, Lindhoff responded to Al-Hammouri's text by texting "Christopher Columbus indeed discovered America" even though Al-Hammouri had not mentioned Christopher Columbus or the discovery of America in his Thanksgiving greeting.

10.      When Al-Hammouri wished Lindhoff a happy Fourth of July, Lindhoff told Al-Hammouri that he needed to learn about America before he could wish him a happy Fourth of July.

11.      Lindhoff also criticized Al-Hammouri's speaking ability, telling him that he needed to learn to speak English better and told Al-Hammouri to send all emails to him for correction.  Al-Hammouri is fluent in English, has an excellent command of the English language and has never received criticism or concern for his language from any other manager.

12.      Lindhoff would frequently call and text Al-Hammouri late at night, at times telling Al-Hammouri to call him back when he returned from the casino, even though Al-Hammouri does not frequent casinos and had never told Lindhoff he was going to a casino. Lindhoff did not frequently text or call the other district managers late at night.

13.      On one occasion, a driver for Defendants who was from Pakistan got into an argument with the manager of the store where he was delivering products.  The manager of the

store was also of Arabic descent.  Lindhoff called Al-Hammouri and asked him why the driver and store manager did not get along and then required Al-Hammouri to go talk to the store manager, even though the store was not in Al-Hammouri's district.

14.    Throughout Al-Hammouri's employment while he was under the management of Lindhoff, Lindhoff continually made comments and statements that were racial in nature, including asking Al-Hammouri about terrorist incidents and other such racially-motivated things.

15.    In approximately April 2014, Al-Hammouri complained to Rachel Zinnega, human resources, about Lindhoff's behavior and actions toward him.  Zinnega told Al-Hammouri that she would look into his complaints.

16.    After Al-Hammouri complained, Lindhoff told Al-Hammouri to meet him in his office and then told him that he should not go to human resources with his complaints.  Lindhoff also told Al-Hammouri that going forward, he might want to look for another job.

17.    Al-Hammouri never heard anything further from Zinnega or any other human resources employee about his complaint.

18.    At this point Al-Hammouri tried to transfer away from Lindhoff.  He applied for approximately 30 different positions within the company.  For each position he applied, the hiring manager told him that he needed to get with Lindhoff because Lindhoff had a development plan for him.  In order for Al-Hammouri to be promoted, the hiring managers were required to reach out to Lindhoff to get approval Al-Hammouri was qualified.

19.    In March 2017, Al-Hammouri reached out to Joe Roland, Senior Vice President, for assistance in transferring away from Lindhoff.  Roland told Al-Hammouri that he believed that Al-Hammouri should be promoted.

20.    After Al-Hammouri's conversation with Roland, Lindhoff approached Al-

Hammouri and told Al-Hammouri that Roland couldn't do anything to help Al-Hammouri and without his (Lindhoff's) approval and permission, Al-Hammouri wasn't going anywhere.

21. In addition to his employment with Defendant, Al-Hammouri also drove for Uber on the weekends. Al-Hammouri was one of three managers who drove for Uber as a side job.

22. On November 27, 2017, Al-Hammouri was told he needed to meet with Lindhoff. When Al-Hammouri arrived at the meeting, Lindhoff, Tom Johnson, human resources and John Laley, fraud department were all present.

23. During the meeting, Al-Hammouri was asked questions about his whereabouts during his employment with Defendant, including specific questions as to why each day he went to the building where his wife worked. Al-Hammouri told Lindhoff that he met his wife for lunch each day. In addition, Laley asked Al-Hammouri why he traveled to a specific address on two occasions during work hours. Al-Hammouri explained that he was on vacation those days and had told Lindhoff that he was interviewing for part-time work at Amazon, which was located in that building. Lindhoff admitted that he had a vague recollection of a conversation but did not remember anything specific about that.

24. Lindhoff accused Al-Hammouri of driving for Uber during his work hours and suspended Al-Hammouri without pay while the fraud investigation was ongoing. Al-Hammouri never drove for Uber during work hours and Defendants never presented Al-Hammouri with any evidence that would have supported the accusations being made against him. No other manager who drove for Uber was similarly investigated.

25. When Al-Hammouri was suspended without pay, it was evident to him that his employment was being terminated. It was also clear to Al-Hammouri that Lindhoff was

6

preventing him from receiving any promotion in the company or being able to move away from Lindhoff and forcing him to leave his employment.

26.     Al-Hammouri's complaints to human resources did not rectify the ongoing harassing and discriminatory treatment and, instead resulted in further harassment and retaliatory actions by Lindhoff.

27.     It was clear to Al-Hammouri that Lindhoff and Defendants would not treat him fairly in the workplace due to his race and would continue to act toward him in harassing and retaliatory manner preventing him from doing his job or being promoted or reassigned.

28.     The conduct to which, Al-Hammouri was subjected was so severe, egregious and pervasive and his working conditions so intolerable that Al-Hammouri was forced to resign from his employment.

29.     After leaving his employment, Al-Hammouri spoke with the Brett Glass, vice-president of human resources about the harassing behavior to which he was subjected and also provided a rebuttal to the investigation against him, which included the reasons was forced to leave his employment.  Al-Hammouri never heard anything further from Defendants regarding his complaints.

## COUNT I –VIOLATION OF 42 U.S.C. SECTION 1981

30.     Plaintiff incorporates by reference each and every factual allegation contained in paragraphs 1 through 29, as if more fully set out herein.

31.     As described above, Defendants subjected Plaintiff to a hostile work environment and discriminatory work environment on the basis of his race in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, et seq.

32.     Defendants' conduct included, inter alia:

7

a. disrespecting Al-Hammouri;

b. failing to recognize his accomplishments and requiring him to perform non work-related tasks;

c. ignoring and failing to communicate with him;

d. requiring him to perform personal errands for management;

e. unjustly accusing him of fraud and unjustly disciplining him;

j. forcing him to meet after work hours to discuss non work-related matters concerning terrorist attacks;

k. making frequent racist comments to and about him;

l. telling others that they should not respond to his text messages or holiday sentiments;

m. blocking his efforts to get promoted or reassigned;

n.  failing to investigate his complaints of discrimination and hostile work. environment;

o.   failing to stop the harassing and unlawful treatment to which he was being subjected;

p.   unfairly criticizing his speaking and writing abilities, and

q.   placing him on unpaid leave.

33.    All of the foregoing conduct was unwelcome, based on Plaintiff's race and sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created an abusive atmosphere.

34.    Defendants deprived Plaintiff, based on his race, of his right to make and enforce contracts on the same terms as enjoyed by white persons, in violation of 42 U.S.C. § 1981

35.    As a direct and proximate result of the violations described herein, Plaintiff has suffered damages and continues to suffer damages in the form of lost wages and emotional distress.

36.    The actions of Defendant were willful, wanton, and with malice or reckless disregard for the rights of Al-Hammouri, entitling him to punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants, for his economic, compensatory and punitive damages suffered as a result of Defendants' actions, for injunctive relief, for reasonable attorney's fees, for his costs and expenses incurred herein, and for such further relief as may be just and equitable.

## COUNT II - RETALIATION UNDER SECTION 1981

37.    Plaintiff incorporates by reference each and every factual allegation contained in paragraphs 1 through 36, as if more fully set out herein.

38.    Because of his complaints Al-Hammouri has suffered retaliation in the form of increased harassment, unfair discipline, lost wages and lost business opportunities.

39.    Further, as described above, Defendant's actions caused Al-Hammouri emotional harm in the form of humiliation and embarrassment.

40.    The actions of Defendant are in violation of 42 U.S.C. §1981, in that Defendant coerced, intimidated, threatened, or interfered with Al-Hammouri following his exercise of rights granted or protected by the statute.

41.    As a direct and proximate result of this retaliation, Al-Hammouri has suffered and continues to suffer damages in the form of lost income and emotional distress.

42.    The actions of Defendants were willful, wanton, and with reckless disregard for the rights of Al-Hammouri, entitling him to punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants, for his damages suffered as a result of Defendants' actions, for injunctive relief, for reasonable attorney's fees, for his costs, interest and expenses incurred herein, and for such further relief as may be just and equitable.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully submitted,

POPHAM LAW FIRM

By: /s/ Dennis E. Egan
Dennis E. Egan    KS Bar No. 70672
712 Broadway, Suite 100
Kansas City, MO 64105
Phone:  (816) 221-2288
E-mail: degan@pophamlaw.com

**ATTORNEYS FOR PLAINTIFF**

11